# Cases

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## February, 1894.

The Greenwich Insurance Company of the City of New York, Respondent, v. Oregon Improvement Company et al., Appellants.

*A check is only a conditional payment of a debt — effect of a receipt therefor — negligence in presenting the check — the damage must be shown.*

In the absence of an agreement to take a security in absolute satisfaction of a debt, the intendment of the law is that such security is a conditional payment only; namely, that if the check is paid the debt is discharged, otherwise not.

The agreement must be proved, and if any inference is to be drawn from silence or want of evidence it is in favor of the payment being a conditional one.

The giving of a receipt for the money, represented by a check, in no way changes the aspect of the transaction, where the money was not received, and the receipt was only an acknowledgment of the receipt of the check.

Where a person is negligent in presenting for payment a check, given in discharge of a debt, a party who is liable for the debt, but not an indorser on the check, is not discharged from his liability, unless it is shown that he is damaged by such negligence.

APPEAL by the defendants, the Oregon Improvement Company and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of June, 1893, upon the verdict of a jury for $1,724.50, rendered by direction of the court, after a trial at the New York Circuit. .

*A. H. Holmes,* for the appellants.

*E. R. Robinson,* for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover from the defendants a *pro rata* or earned portion of a premium on a policy of insurance issued by the plaintiff.

The complaint alleged that the insurance was made at the request and for the benefit and advantage of the defendants, and that the policy was continued in force until about the 20th of March, 1891, when it was canceled at the request of the defendants pursuant to the terms thereof, and that the *pro rata* or earned premium up to the date of the cancellation of said policy was the sum of $1,503.76, and that the defendants promised and agreed to pay said sum.

The defendants in their answer admit the issuance of the policy, and that it was issued at the request and for the benefit of the defendants, and that it continued in force, as alleged in the complaint, until it was canceled at the request of the defendants; they also admit that the *pro rata* or earned portion of the premium was the sum of $1,503.76, which sum defendants promised and agreed to pay; but they deny that payment had been demanded, or that they, or any of them, neglected or refused to pay the same, or any part thereof, and deny that said sum, or any part thereof, was due and owing. They also deny each and every allegation contained in the complaint not expressly admitted. And they further allege that before the commencement of this action the defendants paid to the plaintiff the sum of $1,503.76 in full payment of said claim or demand in said complaint set forth.

Upon the trial it appeared that said plaintiff and defendants never had any transactions directly with each other, but that they were all conducted through a firm of insurance brokers by the name of Satterlee, Bostwick & Martin, and that the plaintiff delivered the policies issued upon the defendants' property to Satterlee & Co., and that the defendants paid the premium upon said policies to said Satterlee & Co., who, after deducting their commissions, paid over the same to the insurance company, excepting in the instance out of which this action arose. It further appeared that shortly after the issuing of the policy in question Satterlee & Co. made application to the defendants for the sum required to enable them to pay the premiums thereon, together with the premium upon another policy obtained by them for the defendants in another insurance company,

and the defendants thereupon, on the 13th of February, 1891, furnished Satterlee & Co. with the amount required to settle said account, and took their receipt in full. Satterlee & Co. did not, however, pay the premium on the policy, and on the 20th of March, 1891, when the policy in question was canceled at the request of the defendants, the *pro rata* or earned portion of said premium due to the plaintiff was $1,503.76, which the defendants promised and agreed to pay, as admitted in their answer. On the 28th of March, 1891, the plaintiff sent Satterlee & Co. a notice demanding the payment of this premium, and also that of another policy issued upon the 20th of March, 1891, but it was not paid. On the fourth of May the treasurer of the defendant, the Oregon Improvement Company, went to see the president of the plaintiff, who informed him that the premium on the plaintiff's policy had not been paid. The treasurer returned to the plaintiff's office with Satterlee, in whose presence the president of the plaintiff again stated that the premium had not been paid, whereupon the treasurer stated that the defendant had paid it on the thirteenth of February to Satterlee & Co.

At this interview Satterlee promised that his firm would send a check, which was to be held for a few days. On the fifth of May the defendant's attorneys wrote a letter to Satterlee & Co., notifying them to produce at once to the defendant satisfactory proof of payment of such premiums to the insurance company or forthwith to repay said moneys to the Oregon Improvement Company. On the same day Satterlee & Co. sent their check to the plaintiff on the Chemical Bank, dated the seventh of May, to its order, for the sum of $6,410.75; this check covered the original premium on the policy in question before cancellation, less the brokers' commission of ten per cent, and entitled the defendant, if the check was paid, to a credit in account with the plaintiff of $7,123.05. The amount thus paid was not adequate to meet the indebtedness due the plaintiff for the earned premium on the policy mentioned in the complaint, and the full premium on the policy issued on the date of the cancellation of the policy mentioned in the complaint, but was simply the amount received by the brokers on February thirteenth, less their commissions. The amount of this check was receipted for on the receipt book of Satterlee & Co. by the plaintiff. Its receipt was also entered in the delivery book of the company. On the afternoon

of May fifth the assistant secretary of the defendant called upon the plaintiff to ascertain whether the premiums had been paid by Satterlee & Co. The president of the plaintiff showed the defendant's agent the check, and called his attention to the fact that it was dated the seventh, and that they should consider it payment only if it was honored by the bank. The check was deposited in the bank on the eleventh of May and not paid. From the time of the giving of the check until the twelfth of May Satterlee & Co. had no sufficient funds to meet the same in the bank.

On the ninth of May the plaintiff wrote to the defendants calling their attention to the fact that they had been requested to hold from day to day the check given in payment of the premiums, and notifying them that the premiums were not paid and that they should look to defendants for their payment. On the eleventh the defendants wrote to the plaintiff in reply to the effect that they had paid the money to the brokers on the thirteenth of February; and that the plaintiff on the fourth of May was notified of such payment; and that on the fifth of May they were informed by the officers of the plaintiff that they had received a check of the brokers for the amount of the premiums less their commissions, and that under the circumstances they were advised that the plaintiffs could not properly look to them for payment thereof, having accepted Satterlee & Co.'s check and their obligation in payment of the original obligations of the defendant therefor. On the same day the plaintiff wrote to the defendants in answer to their letter that their messenger, who called at the plaintiff's office regarding the alleged payment by the brokers, was informed that they had received a check from the brokers for the premium, and his attention was called to the fact that it was dated ahead, and that they should only consider the premiums paid when the check was honored; and furthermore that they should look to the assured under the policy for payment in the event of the failure of the brokers to make their check good.

It was claimed upon the trial that Satterlee & Co. were the agents of the plaintiff to receive the payment of the premium from the defendants, and that even if they were not the plaintiff accepted the check of Satterlee & Co. as payment of the premium on the part of the defendants. These propositions were repeated in different forms, but they were decided against the defendants by the court, who

refused to allow defendants to go to the jury upon any such issues, and directed a verdict in favor of the plaintiff, and from the judgment thereupon entered this appeal is taken.

It is difficult to see how, under the pleadings, it can be claimed that the payment of the 13th of February, 1891, to Satterlee & Co. was a payment to them as the agents of the plaintiff, because the answer admits the surrender of the policy in question on the 20th March, 1891, and that the *pro rata* or earned premium on said policy up to the date of its cancellation was the sum of $1,503.76, which they promised and agreed to pay. Now, if they had already on the 13th of February, 1891, paid the full premium upon this policy, as was claimed upon the trial, how could it be possible that they should owe $1,503.76 upon such policy upon its surrender before maturity for *pro rata* or earned premium? The admission in the pleadings is entirely inconsistent with any such view. But even if that were not so it is apparent from the tenor of the letter of May eleventh by the defendants to the plaintiff, when they were notified as to the condition of affairs in reference to this non-payment of the check of Satterlee & Co., that they did not consider that the payment to Satterlee & Co. of the thirteenth of February had canceled any indebtedness of theirs to the plaintiff, because they say : " On May 4th you were fully notified of such payments (referring to the payment of February thirteenth), and on May 5th we made inquiries of Messrs. Satterlee, Bostwick and Martin, and having been informed by them that they had paid the premiums on the same date, the 5th inst., but after said statement by Satterlee, Bostwick and Martin, we sent to your office and were informed by your officers that they had received a check from Messrs. Satterlee, Bostwick and Martin for the amount of the premiums, less amount of their commissions.

" Under these circumstances we are advised that you cannot properly look to this company for the payment of the premiums referred to, you having accepted Satterlee, Bostwick and Martin's check and their obligations in payment of the original obligation of this company therefor."

Here is no pretense that there was any satisfaction of the indebtedness of the debt to the plaintiff on account of this transaction prior to the fifth of May, when it is alleged the plaintiff accepted

Satterlee's check in cancellation of that obligation.    It was not the payment to Satterlee & Co. which was then claimed to have canceled the indebtedness, but the fact that they had accepted the check of a third party in cancellation of the indebtedness.    And this undoubtedly was the position which the defendants took; and it was not until the failure of Satterlee & Co., and they began to think of the relations existing between them, Satterlee & Co. and the plaintiff, that the idea dawned upon them that payment to Satterlee & Co. liquidated their indebtedness to the insurance company.    But it is needless to discuss this proposition in view of the condition of the pleadings as already suggested.

The only question which was open to discussion in view of the issues raised by the pleadings was the question whether the indebtedness had been discharged by the acceptance of the check of Satterlee & Co.

There is no evidence that there was any agreement that this check should be taken in absolute satisfaction of the debt.    The messenger of the defendants first called upon the plaintiff in regard to this matter to learn whether the premium had been paid.    This action was entirely inconsistent with the idea that the payment to Satterlee & Co. had satisfied their obligation.    When they learned that it had not they brought Mr. Satterlee to the plaintiff and he promised to give his check.    But there is no evidence that upon the giving of that check the plaintiffs agreed to take it in full satisfaction of the debt.    In fact it is difficult to conceive how they would have made any such agreement, because they knew of the embarrassment of Satterlee & Co.    The check was to be post-dated, and they were to wait for its payment.    The defendants were notified of these facts, and it is impossible to spell out such an agreement as would discharge them from their obligations.

The rule as laid down is that in the absence of an agreement to take the security in absolute satisfaction of the debt, the intendment of law is that it is a conditional payment only; namely, that if the check is paid the debt will be discharged; otherwise not.    This proposition is distinctly laid down in the case of *Carroll* v. *Sweet* (128 N. Y. 17) and cases there cited.    There is no room for inferences.    The agreement must be proved.    If any inferences are to be drawn from silence or want of evidence, it is in favor of conditional

payment.    The giving of a receipt for the money as represented by
this check in Satterlee & Co.'s receipt book in no way changed the
aspect of the transaction.    The money was not received, and such
entry was only an acknowledgment of the receipt of the check.    It
discharged nothing, and in no way changed the relation of the
parties.    It would seem, therefore, that the defendants failed to
present sufficient proof to justify a submission to the jury on the
question of payment.

There was a claim made that the plaintiffs were negligent in their
attempts to collect the check in not having deposited it, and that,
therefore, the defendants were discharged.    But the defendants
were not indorsers upon the check, and if the plaintiffs were guilty
of negligence in respect to its collection, in order that the defend-
ants should be discharged by reason thereof it must be shown that
they were damaged thereby.    It appears that in any event it would
not have been paid because there were no funds to meet it.

Upon the whole case we see no error in the conclusion arrived at
by the court below, and the judgment appealed from should be
affirmed, with costs.

O'BRIEN and PARKER, JJ., concurred.