OSCAR L. RICHARD and Others, Copartners, Doing Business under the Firm Name and Style of C. B. RICHARD & Co., Responde..ts, *v.* THE CONNECTICUT ELECTRIC MANUFACTURING COMPANY, Appellant.

First Department, April 21, 1922.

Bills and notes — foreign bills of exchange — action, as claimed by plaintiffs, was for money loaned defendant, drafts being taken as security — evidence supported claim of defendant that plaintiffs had bought drafts of defendant and that action was by payees of drafts against drawer — drafts were foreign bills of exchange — no evidence of presentment of drafts to drawee for acceptance or of protest thereof — drawer not liable.

Where a complaint contains five counts, the first four of which are to recover on four bills of exchange, each for $1,831.75, each dated "New York, May 26th, 1919," all in the same form and drawn by the defendant to the order of the plaintiffs upon M. J. Gourland, Inc., at Kobe, Japan, and the fifth count alleges a loan of $7,327 by plaintiffs to defendant on May 14, 1919, and judgment is demanded for $7,341.20, with interest from May 26, 1919, and plaintiffs claim that the drafts were taken as security for the loan, while defendant asserts that plaintiffs, in effect, discounted the drafts; and, on the trial, plaintiffs introduce in evidence two canceled voucher checks dated May 14 and May 16, 1919, respectively, showing that they paid defendant an amount which might be expected to be the approximate proceeds of the drafts after deducting the discount, and one of the checks contains notations which support defendant's claim, and no evidence is given of the presentation of the drafts to the drawee for acceptance or of their protest for non-payment, the complaint should be dismissed, as the drafts were foreign bills of exchange and presentation and protest are essential under section 111 of the Negotiable Instruments Law in order to make a drawer liable on a foreign bill of exchange.

Appeal by the defendant, The Connecticut Electric Manufacturing Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 5th day of October, 1921, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 21st day of October, 1921, denying defendant's motion for a new trial made upon the minutes.

The amended complaint contains five counts. The first four are to recover on four bills of exchange for $1,831.75, each dated " New York, May 26th, 1919." They are all in precisely the same form, and payable four months after date, and drawn by the defendant to the order of the plaintiffs under their firm name of C. B. Richard & Co. upon M. J. Gourland, Inc., at Kobe, Japan. Each of the bills of exchange at the foot thereof contains the following: " Pay plus interest at the rate of 6 per cent per annum from this date up to the approximate date of arrival of cover in New York." The plaintiffs allege that each of the bills of exchange was executed and delivered by the defendant to them on or about its date, for value received, and was presented to the drawee for acceptance, but that acceptance was refused and the bills of exchange were duly protested for non-acceptance; that due notices of presentment, non-acceptance, dishonor and protest were given to the defendant; that the protest fees on each of the bills of exchange amounted to $3.55, and that payment of the amount of the bills of exchange, interest and protest fees has been duly demanded, but has not been made.

In the 5th count the plaintiffs allege that on or about the 14th of May, 1919, at the special instance and request of the defendant, they loaned to it $7,327, which it promised to repay to them, with six per cent interest, four months from that time; and that payment thereof has been duly demanded, but no part has been paid; and that the whole amount, together with interest, remains due and owing. They demand judgment for $7,341.20, together with interest thereon from the 26th of May, 1919, and costs.

The answer to the amended complaint puts in issue all of the allegations thereof with the exception of the allegations that the defendant was a Connecticut corporation and that it executed and issued to the plaintiff the bills of exchange, and sets up a separate affirmative defense to each of the causes of action alleged. In each defense it repeats, by reference, its denials of the allegations of the complaint, and alleges that at the times mentioned it was and still is engaged in the business of manufacturing and selling electrical supplies; that on or about May 1, 1919, M. J. Gourland, Inc., a

corporation, negotiated with it for the purchase of a large quantity of electrical supplies for shipment to Japan, and that the manner and time of payment therefor was discussed between them; that thereafter the plaintiffs informed defendant that they had taken up with M. J. Gourland, Inc., the matter of payment for the electrical supplies, and that payment therefor would be made by the purchaser through them; and represented that they were financing M. J. Gourland, Inc., in connection with the purchase; that thereupon for a good and valuable consideration and for value received it was mutually agreed by and between the plaintiffs, the purchaser and the defendant that the purchase price of the electrical supplies would be paid by the payment of fifty per cent thereof in cash immediately, and the balance by drafts drawn by defendant on the purchaser to the order of the plaintiffs, who would discount them and pay the proceeds of the discount to the defendant, and that the defendant was to be under no liability to pay the drafts or to repay the proceeds thereof to the plaintiffs in the event of the failure of the drawee to pay the same upon presentation thereof, and that the electrical supplies were to be deemed paid for immediately upon the discounting of the drafts; that, as agreed between the plaintiffs and defendant, the drafts were executed and delivered to the plaintiffs by the defendant on the condition that plaintiffs would look to the drawee and not to defendant for payment thereof; that according to said agreement, electrical supplies to the amount and value of nearly $15,000 were sold and shipped by the defendant to the drawee at Kobe, Japan, and defendant received fifty per cent of the purchase price in cash and drew its drafts, which are those set forth in the first four counts of the complaint; and that they were discounted by plaintiffs in accordance with the terms of said agreement; and that the proceeds of the drafts as so discounted are the basis of the alleged fifth cause of action. The defendant filed and served with its answer, as required by the provisions of section 923 of the Code of Civil Procedure, an affidavit that at no time had it received any notice whatsoever of presentment, non-acceptance, dishonor, non-payment or protest of the drafts or bills of exchange, and that no such notice was at any time delivered to it, and upon information and belief that no such notice was ever mailed to it.

On the trial the plaintiffs introduced in evidence a check dated May 14, 1919, for $7,035.19, drawn by plaintiffs to the order of the defendant, and indorsed by the defendant and stamped " Paid " May sixteenth. The check is referred to as a voucher check; a printed form of check in use by plaintiffs was used containing the heading:

"C. B. RICHARD & Co.
" RUSSIAN & ORIENTAL TRADE DEP'T."

and at the left it contained a printed blank stub with part of the blanks filled out as follows:

" REFERENCE No. *52410*
DESCRIPTION OF *Draft #*
MATERIAL FURNISHED OR *Mdse*
SERVICES RENDERED *May 13 /19*
ACCOUNT CHARGED *The Connecticut Electr. Mfg. Co.*
REQUISITIONED BY
CHECKED BY *BWB*
AUDITED BY
DEPARTMENT MANAGER *(Signature which is illegible.)*"

The writing on the stub as above set forth is italicized. The plaintiffs introduced in evidence another check on a like blank for seventy-two dollars, dated May 16, 1919, drawn by them to the order of the defendant and stamped " paid " May twentieth. On the stub on this check there was written opposite the printed words, " account charged," the name of the defendant, and two initials opposite the words, " requisitioned by," and opposite " department manager " the same name as on the other stub. The plaintiffs then rested without giving any evidence with regard to the writing filled in in the blank stubs on the checks or with regard to the presentation of the bills of exchange for acceptance or the protest thereof, and without introducing any further evidence. Defendant thereupon moved to dismiss the complaint. The motion was denied and it excepted. On motion of the plaintiffs the separate defenses were struck out on the ground that they tended to vary the terms of the bills of exchange. No exception to the ruling was taken. The defendant thereupon called to the stand its secretary, who testified that he opened all of its mail. He was then asked whether in the mail he received any notice " of the present of these drafts at the bank in China." Plaintiffs objected to the question on the ground that it was irrelevant, incompetent and immaterial, and that the fact that the defendant had not received " any mail would not bind the plaintiff." The objection was sustained and no exception taken. The witness then testified that the first knowledge the defendant acquired of the non-payment of the drafts was contained in a letter of the plaintiffs to it dated October 7, 1920, describing the instruments as drafts and giving the numbers thereof as 52410AA, 52410BB, 52410CC and 52410DD, and calling defendant's attention thereto, and stating that they had been returned to the plaintiffs unpaid by their correspondent abroad, and asking

defendant to arrange for their immediate liquidation. This concluded the evidence, and thereupon, on plaintiffs' motion, a verdict was directed for $7,327 and interest, and defendant excepted.

*George B. Hayes* and *Edward K. Nicholson,* attorneys [*Charles E. McMahon* of counsel; *Edward K. Nicholson* with him on the brief], for the appellant.

*Louis A. Jaffer* of counsel, for the respondents.

LAUGHLIN, J.:

The verdict was directed for the amount of the bills of exchange and interest, and not for the amount which the plaintiffs paid to the defendant, evidenced by the checks, which was $219.81 less; but the record does not show on which theory the court deemed the plaintiffs entitled to recover. The principal contention of the respondents is, however, that the judgment can be sustained on the theory that the recovery was for a loan of money; and their counsel argues that this is shown by the fact that the checks were delivered to the defendant and paid some days before the date of the bills of exchange and by the memoranda on the stubs of the checks, which he claims shows that the moneys were advanced to the defendant and it was charged therewith by the plaintiffs, and that by accepting the voucher checks it recognized and admitted that such was the transaction between the parties. It will be observed, however, that the check of the earlier date and for the principal amount shows by the memorandum on the stub that it related to a merchandise transaction involving a draft, and the number written thereon is the number which is on all of the drafts, as shown by the plaintiffs' letter to the defendant, with the letters following the number omitted. In view of the fact that the action is predicated on the drafts as well as the loan and not for a recovery on both, but for a recovery on either the drafts or on the loans, and the amount of the checks is less than the drafts by what might be expected to be the approximate amount to be deducted on discounting the drafts, and there being no other evidence, I am of opinion that the reasonable inference is that the checks, although apparently given a few days in advance of the delivery of the bills of exchange, represent the proceeds of the discount of the drafts by the plaintiffs, and that the plaintiffs must be deemed to have purchased the drafts. If this is the proper inference to be drawn from the evidence, it is unnecessary to discuss the point made by the respondents to the effect that they took the bills of exchange merely as security for the moneys loaned, and, therefore, are at liberty to abandon the bills of exchange and recover on the obligation to repay the money loaned. The authorities relied on by the

respondents in support of that contention are confined to instances in which there was an original indebtedness remaining unpaid, for the payment of which a note or other obligation was given, and in those cases, as between the original parties, the action, at the election of the creditor, may be either on the instrument evidencing the indebtedness or on the original account or transaction giving rise thereto. (See *Greenwich Insurance Co.* v. *Oregon Improvement Co.,* 76 Hun, 194; *Hill* v. *Beebe,* 13 N. Y. 556; *Bradford* v. *Fox,* 38 id. 289; *Jagger Iron Co.* v. *Walker,* 76 id. 521; *Bank of Hamilton* v. *Mudgett,* 34 Hun, 100.) If, however, as I think is the case, the bills of exchange were not taken as security for the money loaned, but constituted the consideration for which the money was paid by the plaintiffs, then manifestly the rule to which reference has been made could have no application. Moreover, the statute prescribes the rights, duties and obligations of the parties to a bill of exchange. The instruments set forth in the complaint are commonly known as time drafts, but they are bills of exchange as defined in section 210 of the Negotiable Instruments Law. Section 111 of the Negotiable Instruments Law defines the liability of the drawer of a draft or bill of exchange as follows: " The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse; and engages that on due presentment the instrument will be accepted and paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it. But the drawer may insert in the instrument an express stipulation negativing or limiting his own liability to the holder." It is contended in behalf of the respondents that these are inland bills of exchange, and that, therefore, by virtue of section 189 of the Negotiable Instruments Law, it was not necessary to protest them for non-acceptance. These, however, are plainly foreign bills of exchange, because they are drawn in New York for acceptance and payment in Kobe, Japan. This sufficiently appears on the face of the instruments, and is further shown by the note at the foot thereof, which indicates that interest in advance of the time of payment to cover approximately the further period required for transmission to New York was to be collected, and by the plaintiffs' letter of October 7, 1920, to the defendant, showing that they had been informed by their correspondent abroad that the bills of exchange had not been paid. Section 213 of the Negotiable Instruments Law defines foreign and inland bills of exchange as follows: " An inland bill of exchange is a bill which is, or on its face purports to be, both drawn and payable within this State. Any other bill

is a foreign bill. Unless the contrary appears on the face of the bill, the holder may treat it as an inland bill."

Here it appears on the face of the bills that they were foreign bills of exchange, and, therefore, the plaintiffs were not at liberty to regard them as inland bills. Section 260 of the Negotiable Instruments Law provides, among other things, that, if a bill of exchange appearing on its face to be a foreign bill is dishonored by non-acceptance, " it must be duly protested for non-acceptance," and further provides as follows: " If it is not so protested, the drawer and indorsers are discharged." In the case at bar there is no evidence even of presentment of these bills of exchange for acceptance, and the failure to protest them for non-acceptance discharged the defendant from liability thereon.

The learned counsel for the respondents further contends that the defendant was primarily liable on these bills of exchange, and that, therefore, they were relieved under section 130 of the Negotiable Instruments Law from presenting the bills of exchange for payment as a condition precedent to holding the defendant liable thereon. That section provides as follows:

" § 130. Effect of want of demand on principal debtor. Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity and has funds there available for that purpose, such ability and willingness are equivalent to a tender of payment upon his part. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

I am of opinion that the provisions of that section are not in point here, for this was not a case of failure to present a negotiable instrument to one primarily liable thereon for payment, but of failure to present these foreign bills of exchange for acceptance; and the drawer of such bills of exchange is not primarily liable thereon and is only liable according to the statute upon failure of the drawee on due presentment to accept or on due demand to pay, and on due protest for non-acceptance or non-payment.

It follows that the judgment should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.