FEIWEL AUERBACH, Respondent, *v.* WILLIAM M. BARRETT, as President of the ADAMS EXPRESS COMPANY, Appellant.

First Department, October 30, 1925.

Bills and notes — foreign bill of exchange — action to recover amount paid to defendant for foreign bill of exchange on Russian bank payable in rubles — bill of exchange was never presented and shortly after issuance plaintiff demanded return of money by defendant — defendant's liability is governed by Negotiable Instruments Law — defendant is not liable under Negotiable Instruments Law, § 260, in absence of notice of dishonor for non-acceptance or non-payment — offering bill to defendant in New York not presentment — judgment for plaintiff reversed — action to recover on contract to deposit money in Austrian bank and procure bank book — evidence shows non-compliance by defendant — defendant is liable.

The plaintiff is not entitled to recover the amount of money paid to the defendant for a foreign bill of exchange on a Russian bank payable in rubles, since the defendant's liability is regulated by the Negotiable Instruments Law and is dependent upon presentment of the bill of exchange to the person on whom it is drawn, and, if not accepted or not paid, by service of notice of dishonor upon the drawer. Since the plaintiff in this case did not present the bill of exchange for acceptance or payment, but merely tendered the bill to the defendant shortly after it was issued, and demanded the return of his money,

the defendant is not liable under section 260 of the Negotiable Instruments Law, and the judgment in favor of the plaintiff is reversed.

The plaintiff is entitled to recover, however, on a cause of action based on an agreement by the defendant to deposit to the plaintiff's credit in an Austrian bank a certain amount in kronen and to procure a bank book for the plaintiff, for which the plaintiff gave the defendant the equivalent in American money, since the evidence shows that the plaintiff performed his part of the contract but that the defendant never carried out its agreement to deliver a bank book to the plaintiff, although the plaintiff made demand therefor.

APPEAL by the defendant, William M. Barrett, as president of the Adams Express Company, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 26th day of June, 1924, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Fourth District, in favor of the plaintiff.

*Stockton & Stockton* [*George M. Billings* of counsel], for the appellant.

——————— ———————, for the respondent.

BURR, J.:

The action is based upon two claims arising out of foreign exchange transactions. No written complaint was served, and the grounds of these two causes of action are contained in the plaintiff's bill of particulars. In each case the judgment entered restored to the plaintiff the original consideration given by the plaintiff upon the transaction, with interest. Upon neither cause of action did the plaintiff offer any testimony to fix damages.

As to the first cause of action the bill of particulars sets forth:

" 1. That heretofore and on or about the 4th day of September, 1917, this plaintiff delivered to this defendant the sum of $140 and received from the defendant a check as follows:

" ' THE ADAMS EXPRESS COMPANY " ' No. 1017.

" ' Cheque

" ' NEW YORK, *September fourth*, 1917.

" ' On presentation of this original cheque, Duplicate Unpaid, pay from our credit balance to the order of Feiwel Auerbach, Rub 1000 00/100 the sum of Rubles One thousand and no/100.

" ' To Russian Commercial and Industrial Bank.

" ' Petrograd, Russia.

" ' THE ADAMS EXPRESS COMPANY,

" ' C. S. SPENCER, *Treasurer.*

" ' Countersigned

" ' C. A. PACKIE, *Agent.*'

" 2. That within a reasonable time after September 4th, 1917, this plaintiff being unable to present the check for payment returned the same to the defendant and demanded the refund of his money.

" 3. That this defendant thereupon failed and refused to refund the proceeds of said check delivered to the defendant and that this plaintiff has been damaged in the sum of $140 with interest from September 4, 1917."

As appears from the testimony of plaintiff, the " reasonable time " referred to in paragraph 2 is about one month. This would place the plaintiff's tender of the draft to the defendant at New York and his demand for refund at an early date in October, 1917. The second Russian (Bolshevik) revolution occurred in November, 1917.

The plaintiff's allegation that he " returned " the draft to the defendant is not substantiated by the evidence. The draft in duplicate was in his possession when he brought suit, and he produced it on the trial and still has it. Plaintiff did, however, offer to return the draft and demanded his money back. Plaintiff testified: " Q. The draft marked Plaintiff's Exhibit 4 is dated September 4, 1917; how long after that was it that you went to the main office and offered to return this draft? A. It is the first time when I — Q. Please, Mr. Auerbach, how long after this did you go to the main office, a month or two? How long after? A. It is about a month maybe. Q. Did you get your money back? A. No, never."

The plaintiff's allegation that he was unable to present the draft for payment in Russia is also without substantiation upon the record. The proof merely shows without explanation that he never presented the draft at the bank upon which it was drawn. " Q. Was this draft ever presented by you to the bank on which it was drawn? A. No, never. * * * Q. As a matter of fact, you never presented this draft marked Plaintiff's Exhibit 4? A. No. Q. Did you ever receive back the sum of $140? A. No, never."

The Bolshevik revolution in November might have provided an explanation for the plaintiff's failure to present the draft, but, as appears, it was tendered to the defendant at New York and restitution demanded about a month before the revolution, and a considerable time before the plaintiff could have known of its approach. " Q. Just answer the question: Did you ask them to give you back the money before you read of the Bolshevik uprising? A. Sure."

The demands which the plaintiff made upon the defendant at its New York office were not for the " proceeds " of the check,

but for the money which he had originally paid for it, *i. e.*, for a refund, not for payment.

The defendant's liability upon this instrument is governed by the provisions of the Negotiable Instruments Law applicable to foreign bills of exchange. (*Richard* v. *Connecticut Electric Mfg. Co.*, 200 App. Div. 681; *Goeske* v. *Taylor*, 205 id. 429; Neg. Inst. Law, §§ 210, 213, 321.) Section 213 of the act distinguishes between inland and foreign bills of exchange, as follows: " An inland bill of exchange is a bill which is, or on its face purports to be, both drawn and payable within this State. Any other bill is a foreign bill. * * *."

Section 321 enacts that: " A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

The provisions of the law applicable to a bill of exchange are as follows: Section 130: " Presentment for payment is not necessary in order to charge the person primarily liable on the instrument. * * *. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

Section 160 enacts that: " Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Section 189 enacts that: " Where any negotiable instrument has been dishonored it may be protested for non-acceptance or non-payment, as the case may be; but protest is not required, except in the case of foreign bills of exchange."

Section 260 provides that: " Where a foreign bill appearing on its face to be such is dishonored by non-acceptance, it must be duly protested for non-acceptance, and where such a bill which has not previously been dishonored by non-acceptance is dishonored by non-payment, it must be duly protested for non-payment. If it is not so protested, the drawer and the indorsers are discharged. Where a bill does not appear on its face to be a foreign bill, protest thereof in case of dishonor is unnecessary."

The defendant is the drawer of this bill of exchange. Its liability thereon is secondary and not primary. In *Richard* v. *Connecticut Electric Mfg. Co.* (*supra*) plaintiffs in that case contended that the defendant drawer of bills of exchange drawn in New York for acceptance in Kobe, Japan, was primarily liable thereon under section 130 of the Negotiable Instruments Law, and that, therefore,

presentment for payment was not necessary in order to charge him upon the instrument. But Mr. Justice LAUGHLIN, speaking for a unanimous court, said of section 130: " I am of opinion that the provisions of that section are not in point here, for this was not a case of failure to present a negotiable instrument to one primarily liable thereon for payment, but of failure to present these foreign bills of exchange for acceptance; and the drawer of such bills of exchange is not primarily liable thereon and is only liable, according to the statute, upon failure of the drawee on due presentment to accept, or on due demand to pay, and on due protest for non-acceptance or non-payment."

This court in the same opinion also said: " Here it appears on the face of the bills that they were foreign bills of exchange, and, therefore, the plaintiffs were not at liberty to regard them as inland bills. Section 260 of the Negotiable Instruments Law provides, among other things, that, if a bill of exchange appearing on its face to be a foreign bill is dishonored by non-acceptance, ' it must be duly protested for non-acceptance,' and further provides as follows: ' If it is not so protested, the drawer and indorsers are discharged.' In the case at bar there is no evidence even of presentment of these bills of exchange for acceptance, and the failure to protest them for non-acceptance discharged the defendant from liability thereon."

Plaintiff admits that he failed to present this bill for payment. The proof fails to show notice of dishonor, or protest for non-payment.

It is clear from the evidence in this case that the offering of this bill to the defendant drawer, at New York, was not a presentment for payment within the meaning of the law, because it was not made at the place specified in the instrument nor to the person primarily liable upon it. In addition it also clearly appears that the " presentment " which took place at New York was not a presentment for payment, since the plaintiff did not demand payment (which was to have been made in the sum of 1,000 rubles), but restitution, *i. e.*, the repayment of $140.

Presentment for payment must be made by the holder, or by a person authorized to receive payment on his behalf, at a reasonable hour on a business day and at a proper place as defined by the statute, to the person primarily liable on the instrument; or if he is absent or inaccessible, to any person found at the place where presentment is to be made; and presentment for payment is made at a proper place " where a place of payment is specified in the instrument and it is there presented." (Neg. Inst. Law, §§ 132, 133.)

The judgment entered is not supported by any proof of damages within the rule of *Hoppe* v. *Russo-Asiatic Bank* (235 N. Y. 37) and of *Pavenstedt* v. *New York Life Ins. Co.* (203 id. 91, 95). Under the case of *Pavenstedt* v. *New York Life Ins. Co.* (*supra*), damages for failure to honor a foreign bill upon presentment consist of the face of the bill, interest, protest fees and re-exchange defined as the additional expense of procuring a new bill for the same amount payable in the same place on the day of dishonor. Under the case of *Hoppe* v. *Russo-Asiatic Bank* (*supra*), where primarily the plaintiff is entitled to recover a sum expressed in foreign currency, in determining the amount of a judgment the rate of exchange at the date of breach of the contract is to be applied.

The plaintiff failed to establish any right to restitution. His check called for 1,000 rubles whether presented in Petrograd or New York city. Without proof of a breach of contract plaintiff failed to establish a cause of action based on the theory of money had and received. The right to restitution or rescission in foreign remittance contracts must be based upon proof of breach of provisions of the contract itself. (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Safian* v. *Irving National Bank*, 202 App. Div. 459; affd., without opinion, 236 N. Y. 513; *Dermer* v. *Barrett*, 202 App. Div. 828; affd., without opinion, 235 N. Y. 588; *Chemical National Bank* v. *Equitable Trust Co.*, 201 App. Div. 485; *Bratspies* v. *Barrett*, 122 Misc. 684; recently affirmed on this point by this court, 211 App. Div. 765; *Stern* v. *Barrett*, 235 N. Y. 613.)

For these reasons I am of the opinion the judgment upon the first cause of action should be reversed and judgment rendered in favor of the defendant.

The plaintiff's second cause of action as set forth in his bill of particulars is as follows:

" For a Second Cause of Action:

" 4. That heretofore and on the 27th day of September, 1916, this plaintiff and this defendant entered into an agreement wherein and whereby this plaintiff paid to the defendant the sum of $244, which the defendant received and promised to deposit within a reasonable time thereafter in the Government Postal Savings Bank at Vienna a certain amount of kronen, being Austrian money denomination and which was supposed to be of an amount equivalent to the sum paid by the plaintiff to the defendant as aforesaid, less the defendant's commissions, and this defendant in addition thereto and at the same time promised to procure for this plaintiff a bank book from the Government Postal Savings Bank at Vienna, showing the deposit therein of a certain amount of kronen being Austrian money denomination and which was agreed to be an amount

equivalent to the sum paid by the plaintiff to the defendant as aforesaid, less the defendant's commissions.

" 5. That this plaintiff has duly complied with all the terms and conditions of such agreement on his behalf to be performed but that this defendant has violated said agreement, in that it failed and neglected to deposit in the Government Postal Bank at Vienna a certain amount of kronen, being Austrian money denomination in an amount equivalent to the sum paid by the plaintiff to the defendant, less the defendant's commissions and in that this defendant failed to procure a bank book for the plaintiff, showing the deposit therein of a certain amount of kronen being Austrian money denomination in an amount equivalent to the sum paid by the plaintiff to the defendant less its commissions.

" 6. That by reason thereof this plaintiff has been damaged in the sum of $244 with interest from the 27th day of September, 1916."

It appears from the uncontradicted testimony of the plaintiff that in September, 1916, he deposited the sum of $244 with defendant on its promise to deposit it with the Postal Savings Bank of Vienna, and to give to plaintiff a bank book in a few weeks thereafter showing such deposit. Many times subsequently plaintiff demanded the bank book or the return of the money. It is conceded on the record he never received either. I think, therefore, defendant having concededly failed to carry out its agreement with plaintiff as to the delivery of the bank book, and having offered no excuse nor explanation therefor, the latter was entitled to judgment for damages represented by the amount of his deposit, and that the judgment rendered on the second cause of action should be affirmed.

The determination appealed from should be modified by deducting the sum of $205.16 (including interest and costs allowed on the first cause of action) and the costs of appeal in the Appellate Term, and as so modified affirmed, without costs of this appeal.

CLARKE, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Determination modified by deducting the sum of $205.16 (including interest and costs allowed on the first cause of action) and the costs of appeal in the Appellate Term, and as so modified affirmed, without costs of this appeal. Settle order on notice.