William Hartung, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and City of Pittsburgh, Respondents.

Argued November 13, 1979, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

*Thomas P. Greer,* for petitioner.

*Zan I. Hodzic,* Assistant City Solicitor, with him *Arthur G. Gilkes, Jr.,* Assistant City Solicitor and *Mead J. Mulvihill, Jr.,* City Solicitor, for respondents.

OPINION BY JUDGE CRAIG, February 7, 1980:

This workmen's compensation appeal has a complex factual and procedural background.

Claimant, while employed by the City of Pittsburgh, fell from a truck and fractured his jaw on June 2, 1967. He received total disability compensation, by agreement, for the periods from June 10, 1967 to August 17, 1967 and again from February 13, 1968 to April 8, 1968.

Claimant signed a Final Settlement Receipt in which he acknowledged that he received a City of Pittsburgh check, No. 081568, as final payment of compensation owing and that he was able to return to work without disability or loss of earning power. Claimant cashed that check on April 23, 1968.

The final receipt is not dated, and the Department of Labor and Industry in Harrisburg has no record that it was ever filed there. Claimant acknowledged that the signature on the receipt was his, but he could not recall signing it.

Claimant returned to work with the city in 1968, but in a lighter job, which he held until he was retired in 1974.

A physician examined claimant in 1974 and concluded that he was still disabled as a result of the accident in 1967.

On May 29, 1974 claimant filed a compensation claim against the city. The compensation authorities have throughout treated that claim as a petition to set aside a final receipt, filed under Section 434 of The

Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1001 (Act).[1]

The issue now before us is whether that petition was properly dismissed because it was barred by the two-year limitation within which to file such a petition, found in Section 434 of the Act.

Claimant raises several arguments which are premised on the absence of a finding of fact as to the date of the final receipt. We believe that our decision in *Pliscott v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 292, 305 A.2d 918 (1973) controls.

We held there that it is the date of the last payment that begins the running of the limitations period within which to file a petition, not the date of the receipt.

The language of Section 434, as quoted in a foregoing footnote, continues to support that view. Consequently, the last payment date had to have been no later than April 23, 1968, when claimant cashed Check No. 081508, clearly more than two years before the present claim was filed, regardless of when the final receipt may be inferred to have been signed.

---

[1] The applicable amendment of Section 434 reads:

A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement or award: Provided, however, That the board or a referee designated by the board, may, at any time within two years from the date to which payments have been made, set aside a final receipt, upon petition filed with the board, if it be conclusively proved that all disability due to the accident in fact had not terminated. . . .

This was the text of Section 434 as amended by Section 4 of the Act of April 4, 1974, P.L. 239. That section was later amended by Section 14 of the Act of December 5,.1974, P.L. 782, to increase the time for filing a petition to three years.

Nevertheless, claimant argues that *Pliscott* should be distinguished in this case because it is possible that he signed the final receipt more than two years after the final payment of compensation but before the cessation of suspended partial disability rights he may have had under Section 413 of the Act.[2] Claimant contends that it would be incongruous to have a final receipt become "sudden death" to a living compensation right.

The argument is ingenious, but unfortunately there is no factual basis in the record to support it; we cannot usurp the factfinder's role and presume, as claimant would have us do, that the receipt was signed more than two years after the last payment of compensation.

---

[2] The provision reads in relevant part:

A referee designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: . . . And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award *may be resumed at any time during the period for which compensation for partial disability is payable,* unless it be shown that the loss in earnings does not result from the disability due to the injury. (Emphasis added.)

The period for which compensation for partial disability was payable is 350 weeks under the version of Section 306(b) of the Act, 77 P.S. §512 in effect at the relevant time here.

Even more novel is claimant's remaining argument that, because it has been shown that claimant worked while disabled, the final receipt does not prevent claimant from qualifying for reinstated disability under Section 413 of the Act, a disability right which was in abeyance from the time he returned to work.

However, the wording of Section 413 applies only to notices of compensation payable, original or supplemental agreements or awards of compensation.[3] In *McGahen v. General Electric Co.*, 406 Pa. 57, 177 A.2d 85 (1962), our Supreme Court specifically rejected an argument that final receipts had to comply with Section 409 of the Act, 77 P.S. §733, which similarly refers only to "agreements" and "supplemental agreements." The court refused to insert statutory language that did not exist, reasoning that it was a subject for the legislature to add if it saw fit.

We must say the same in construing Section 413. It does not apply to final receipts, and the literal language of Section 434 requires us to invoke that section when a final receipt exists.

As such, claimant has not timely filed his petition as we must construe the starting date under *Pliscott, supra.*

We must, therefore, affirm the board.

---

[3] We are not unmindful of the fact that under the facts of this case, it appears, in retrospect, as though a supplemental agreement rather than a final receipt would have been appropriate when claimant returned to work. That would have preserved his suspended rights under Section 413.

However, if any route around the timeliness bar to setting aside the final receipt exists, it is through evidence of fraud or coercion or other improper conduct of the employer, *see McGahen, supra,* or later payments in lieu of compensation that could toll the applicable limitations period, *see City of Scranton v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 424, 310 A.2d 701 (1973). Claimant raises neither argument nor introduced evidence in support of such.

## Order

AND Now, this 7th day of February, 1980, the order of the Workmen's Compensation Appeal Board at No. A-74010, dated June 15, 1978, in this matter is affirmed.

Judge DiSALLE did not participate in the decision in this case.