542 A.2d 189

Aetna Electroplating Company, Petitioner *v.* Workmen's Compensation Appeal Board (Steen), Respondents.

Submitted on briefs February 24, 1988, to Judges CRAIG and MACPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

*Joseph S. Bekelja,* with him, *Sandra R. Craig, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer,* for petitioner.

*Brian R. Steiner, Steiner & Segal,* and *Lee M. Herman,* for respondent, John Steen.

OPINION BY SENIOR JUDGE BARBIERI, May 10, 1988:

Before this Court in this workmen's compensation case is the appeal of Aetna Electroplating Co., Employer, seeking our review of an order of the Workmen's Compensation Appeal Board (Board) which sustained a decision of a referee reinstating total disability benefits in favor of John Steen, Claimant. We will affirm.

The referee's uncontested findings are that Claimant was originally injured on June 13, 1980 while in the employ of Employer as Chief of Quality Control when a tank containing cyanide, hydrogen, peroxide and water, overheated and exploded causing Claimant to sustain severe burns of the arms, face, hands, chest and eyes. Compensation was instituted by Notice of Compensation Payable and Claimant returned to work for Employer at modified duties. On returning to work, Claimant was tendered a final check and Final Receipt. In contest are the date of Claimant's return to work, the date when the last payment of compensation took place, as to which his Employer interposes as a defense the limitation in Section 434 of The Pennsylvania Work-

men's Compensation Act (Act).[1] The referee's relevant findings are as follows:

3. Claimant returned to work on or about August 28, 1980 at light and modified job duties, after meeting with his Plant Supervisor, Personnel Director and Company President. Claimant received his last payment of compensation when he signed a Final Receipt which was dated August 21, 1980. Claimant cashed his last payment on September 4, 1980.

4. At the time Claimant signed the Final Receipt, he continued to suffer pain and tremors of both hands, limitation of movement of the hands and continued to see his doctor, Steven Marc Kiel, M.D., all as a result of his job injury.

5. After signing the Final Receipt, Claimant continued to require medication two times daily, and received treatment from Steven Marc Kiel, M.D. every two (2) to three (3) months.

6. Claimant has testified that he continues to have pain in and about both arms, associated with constant burning and stinging sensations with tremors in both arms and hands.

7. While Claimant did return to work, he was unable to perform all his pre-injury duties as Quality Control Chief. Claimant could not take inventory, or check plant equipment because it was too heavy to move, calibrate the thickness of various metals, place metals into and remove them from baking ovens, or clearly write instructions regarding plating of metals, due to tremors. Claimant was able to perform all these duties prior to the June 13, 1980, explosion.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1001.

8. Claimant was laid-off on or about May 15, 1981 because he was unable to perform all the duties of Chief of Quality Control, due to the effects of his original work related injury.

Other findings by the referee indicate that he accepted the testimony offered by the Claimant, both lay and medical, and rejected such testimony offered by the Employer. His findings on disability are the following:

12. Claimant has come under the treatment of Steve Marc Kiel, M.D. and Charles Hartford, M.D. Dr. Kiel, a board certified neurologist, psychiatrist, has testified that Claimant was in good health until the 1980 explosion. Since that time, neurologically, he has developed tremors involving both hands, exacerbated by activity such as writing and moving his hands, especially on the right dominant side. That Claimant has pain and a burning sensation at the burn site. Dr. Kiel was of the opinion that Claimant suffers from pain in the arms caused by the burns and its effect on superficial nerves, coupled with essential tremors caused by the work injury of June 13, 1980.

14. The Referee is persuaded by the testimony and opinions of Claimant's treatment physician, Dr. Steven Marc Kiel; and is not persuaded by the testimony of Dr. Piacents [sic] whose opinions are not credible nor worthy of belief.

We note that although the petition in the instant case was on the form of a reinstatement petition in which it is asserted that the cessation of benefit payments was by way of a suspension, the compensation authorities throughout have treated the petition quite properly as one to set aside a Final Receipt. We note in passing, however, that in light of Claimant's persisting disability at the time of his return to work and the fact that he did not return to his full and regular duties, a

suspension would have been a more proper basis for discontinuing compensation payments.

In any event, Section 434 provides a presumption in favor of the cessation of payments. This Section provides: "A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement notice or award, shall be *prima facie evidence* of the termination of the employer's liability to pay compensation under such agreement, notice or award . . ." (emphasis added).

The prima facie evidence presumption may be rebutted, of course, where it is later shown that all disability had not in fact ceased. This portion of Section 434 reads:

> Provided, however, That a referee designated by the department may, at any time within three years from the date to which payments have been made, set aside a final receipt, upon petition filed with the department, or on the department's own motion, if it be shown that all disability due to the injury in fact had not terminated.

Employer seeks review of the action of the compensation authorities in setting aside the Final Receipt on three grounds: (1) it was an error of law for the referee and Board to conclude that Claimant's petition was filed within the three-year period provided in Section 434;[2] (2) the referee's finding that all disability due to the injury of June 13, 1980 had not terminated at the time Claimant signed the Final Receipt is not supported by the evidence; and (3) the referee's finding that Claimant's continuing disability was caused by the injury of June 13, 1980 is not supported by substantial evi-

---

[2] Claimant's petition was filed August 8, 1983, and Employer argues that the last payment was July 29, 1980.

dence. As noted by the referee, the Final Receipt is dated August 21, 1980 and there is substantial evidence to support the referee's determination that Claimant returned to work on August 28, 1980, at light and modified job duties and that the last payment in the form of a draft was cashed or paid on September 4, 1980.

It seems too obvious for argument that under the provision in Section 434 that the three-year limitation does not begin to run until the last payment has been made, filing being permitted "at any time within three years from the date to which *payments* have been made. . . ." (Emphasis added.) Payment is not made simply by execution and delivery of a draft which may or may not be honored by the draftee bank. Accordingly, we have held that "it is the date of the last payment that begins the running of the limitations period within which to file a petition, not the date of the receipt." *Hartung v. Workmen's Compensation Appeal Board (Pittsburgh)*, 49 Pa. Commonwealth Ct. 240, 242, 410 A.2d 1301, 1302 (1980), relying upon our decision in *Pliscott v. Workmen's Compensation Appeal Board (Drumble)*, 9 Pa. Commonwealth Ct. 292, 305 A.2d 918 (1973). Employer argues against accepting these long standing authorities on the basis of dicta in a footnote in the case of *Urick Foundry Co. v. Workmen's Compensation Appeal Board (Aarnio)*, 91 Pa. Commonwealth Ct. 24, 496 A.2d 883 (1985), a case in which we could not reach the merits because the appeal was interlocutory. The footnote, however, would not be applicable here, since it is concerned with a negotiable form of instrument, a check, whereas here payment was not made by check but was made by draft, payable solely on presentation. On the back of the draft the following rubber stamp statements appear:

·FOR DEPOSIT ONLY
AETNA ELECTROPLATING CO.
AETNA ELECTROPLATING CO. INC.

PAID
SEP 04 1980
ROCKWOOD INSURANCE COMPANY .

It is clear from this, that payment on the draft by Employer's insurer was finally made on September 4, 1980. *See Diskin v. Philadelphia Police Pension Fund Ass'n.*, 367 Pa. 273, 278, 80 A.2d 850, 852 (1951), where our Supreme Court held that mere delivery of a check did not constitute "payment," stating:

> If, therefore, as we now hold, Diskin's receipt of the check of June 1, 1948 did not constitute legal *payment* of his pension his retention of it for the period of 27 days until his death did not convert it into such payment, . . . If it was returned by Diskin he may have had in mind that he would later cash the check; unless and until he did so, however, he had not actually received payment. . . . (Emphasis the Court's.)

We are not aware from anything in the record, however, as to just when and how Claimant was paid, if indeed he was paid in any way, the amount stated on the last draft. He testified:

> Q. At the time that you signed this Final Receipt was there a check of $95.82 tendered to your [sic] by the employer?
>
> A. Yes.
>
> Q. What did you do with the check?
>
> A. Signed the check and gave it back to my employer.
>
> Q. Was the check made out to you?
>
> A. Yes.

Q. Was that check from Rockwood Insurance Company?

A. Yes.

Q. Was that check for Workmen's Compensation to the best of your understanding?

A. I assume it was. (R.R. at 56a.)

This transaction apparently took place in connection with Claimant's statements to his superiors, including the president of the company, as to the Final Receipt transaction carried out by the company accountant, Doris Caleb. Claimant made the following statements:

Q. Did you read the Final Receipt when you signed it?

A. When I signed the papers for the people who presented them to me, I said, 'Look, I cannot really sign this release simply because it takes one year before I'm even knowing that I'm well. So, I can't legally sign this and say that I am well because I don't know.' (R.R. at 69a-70a.)

. . . .

THE REFEREE: At the time you had signed this Final Receipt and the statement you had just made, who was the person that brought you this receipt to sign?

THE WITNESS: The accountant. She had discussed it with the president, and I told the accountant; and the president said, 'Yes, I know.' I said, 'All right, I just want you all to know that I am not released because it will be a year before I'll know how well I really am.' (R.R. at 70a.)

The accountant was not called to testify.

There is no clear statement anywhere in the record that Claimant was ever paid the sum of money represented by the draft (erroneously referred to as a check). As previously noted, the endorsements on the back of it indicate that it was deposited to the account of Aetna

Electroplating Company, Employer, deposited apparently on August 28, 1980, and was finally paid on September 4, 1980 (N.T. pp. 295a-296a.).

It follows, that the date of *payment* of the draft could not have been before September 4, 1980 and this delay in a complicated set of banking transactions clearly represents the type of "intentional delay in transmittal" envisioned in *Urick,* providing the basis for considering the actual date of receipt of payment as the date beginning the running of the statute of limitations rather than the date of the instrument, particularly where the instrument is not negotiable, as a check is, but is a draft on a specific bank to produce cash only on the acceptance of the draft by the draftee bank.

Accordingly, we can find no merit in Employer's first contention.

Likewise, we find also without merit Employer's second and third contentions. These contentions are supported by arguments urging that the referee should have resolved contested issues in favor of Employer rather than as he did, in favor of Claimant. The second contention, bearing in mind that a Final Receipt is only prima facie evidence of the termination of the Employer's liability to pay compensation, as previously noted, there is substantial evidence to support the referee's findings Nos. 3, 4, 5, 6, 7, 8 and 10,[3] all of which estab-

---

[3] All of these findings are quoted above except No. 10, which reads:

10. Claimant presented the testimony of co-worker, Milford Holliday, who has been employed by the Defendant for twenty-one (21) years. The witness testified that: He has worked closely with the Claimant since 1974; that prior to the 1980 explosion, Claimant was competent and very active at her [sic] company, that since the explosion, Claimant was always asking for help in lifting items he previously lifted without help; that Claimant's arms and hands would constantly tremble making his writing illeg-

lish that Claimant still had disability from his injuries suffered on June 13, 1980 when he returned to work on or about August 28, 1980. The referee, as was his right, chose to disbelieve the testimony offered by the Employer.

As for the facts found in the referee's finding No. 12, describing Claimant's disabilities as detailed by his attending physician, accepted by the referee, we find are supported by substantial evidence.[4]

Employer states that under our *Sheibley*[5] decision unequivocal medical evidence is required to establish that all disability due to the injury is not terminated at the time the claimant signed the Final Receipt. *Sheibley* does not so hold, but holds simply that the Board in *Sheibley* decided against the claimant properly, for lack of "sufficient competent evidence" that "some disability did exist at the time when the Final Receipt was executed." Employer goes on to state that there is a requirement of unequivocal medical testimony to establish a continuing disability where claimant returns to work with no loss of earning power and no obvious residual disability. Employer admits that medical testimony is not required where it is obvious that there is disability which is the result of the original injury, citing *Bethlehem Steel Corporation v. Workmen's Compensation Appeal Board (Turjak)*, 95 Pa. Commonwealth Ct. 330, 505 A.2d 632 (1986); *Dunmore School District v. Work-*

---

ible and it took Claimant a longer amount of time to check parts and calibrate machinery and thickness because his hands trembled.

[4] The referee's Finding No. 14 specifically accepts the testimony of Claimant's physician and rejects on credibility grounds the testimony of the Employer's medical witness.

[5] *Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services Co.)*, 86 Pa. Commonwealth Ct. 28, 483 A.2d 593 (1984).

*men's Compensation Appeal Board (Lorusso),* 89 Pa.
Commonwealth Ct. 368, 492 A.2d 773 (1985). The
cases cited clearly support the view that *Sheibley* is not
applicable in the sense of requiring medical testimony
where it is obvious that the disability is the result of the
original injury, and it is so stated in *Bethlehem Steel,*
citing and quoting from *Dunmore,* as follows:

> . . . .[I]n Dunmore . . . . we held that a claimant's
> own testimony can support a finding that the
> claimant was still disabled at the time he signed
> the final receipt and that '[u]nequivocal medical
> testimony is required to establish continuing dis-
> ability only in those cases where the claimant
> has resumed work with no loss of earning power
> and no obvious residual disability. Where it is
> obvious that the disability is the result of the
> original injury, however, medical testimony is
> not required.'

More recently in *Shinkovec v. Workmen's Compen-*
*sation Appeal Board (Capital Distributing Company),*
115 Pa. Commonwealth Ct. 81, 539 A.2d 917 (1988),
we stated:

> The claimant's testimony that he still is experi-
> encing the effects of the original injury, if be-
> lieved, is sufficient evidence for a referee to
> award benefits. Dunmore. Unequivocal medical
> evidence is only required when the claimant has
> returned to work without loss of earning power
> and with no obvious residual disabilities. In
> Bethlehem Steel Corp. v. Workmen's Compen-
> sation Appeal Board, 95 Pa. Commonwealth Ct.
> 330, 550 A.2d 632 (1986), we held that the
> claimant's own testimony that disability as a re-
> sult of a back injury had not ceased when he
> signed a final receipt was sufficient to support an
> award of benefits. The fair import of Bethlehem
> Steel is that a claimant's own testimony that he

still is suffering from the effects of the original disabling injury suffices to prove an *obvious* residual disability. (Emphasis the Court's.)

Employer argues that Dr. Kiel, who was called as Claimant's witness, and whose testimony unequivocally establishes that Claimant returned to work with disability (N.T. pp. 81a-82a), did not see the Claimant until March of 1982, but the fact is that he was under the care of Dr. Hartford when he returned to work and it was Dr. Hartford who referred him to Dr. Kiel. As to Dr. Hartford's view of Claimant's capacity to resume his former duties, the following, unobjected to, is most enlightening:

A. When everything had healed, at least with a scab on it—the burn wasn't accessible for rubbing off or whatever—I asked Dr. Hartford if I could go back to work; and he said, 'Only if you can do limited whatever and if at any time you start stinging or burning or whatever, you leave there, call me immediately. Do not go to any other doctor, come back here.'

He explained to me that some things are going to take one year before we'll know whatever the condition is going to be. (R.R. 41a.)

In meetings with supervisory and top executive and ownership personnel, Claimant made it very clear he could only return to limited work and under his doctor's orders was to report immediately if certain symptoms recurred as to his incapacity to perform his former work, his testimony accepted by the referee, is in part, as follows:

A. I told them, 'I can't do everything that I've been doing. I can't do most of it. I'm being very frank with you. My arms are constantly hurting, constantly burning, constantly stinging. If you note, in my writing, I can't even write any more.'

At that time they planned a meeting of all of the department heads and plan [sic] foremen, and they called a meeting and we sat down and discussed the fact and the limits. They said, 'These are the responsibilities that John has been doing that you people are going to have to do for him,' and they even posted them on the bulletin board. They made a definite announcement to them simply because I couldn't do them. (R.R. 44a-45a.)

It follows that, aside from the testimony of Dr. Kiel, the record is uncontradicted that Claimant returned to work with medical limitations fixed by his then attending physician and his disabilities were made obvious to his Employer and accepted by the Employer. There can be no question that the Final Receipt in this case was a very qualified one. It certainly cannot be accepted as indicating that all of Claimant's disability had ceased when he returned to work; remembering, as previously noted, that a Final Receipt is only prima facie evidence of termination under the terms of Section 434 of the Act.

Finally, we consider Employer's third contention that Claimant's continuing disability is not work-related and that the referee's finding to that effect is not supported by substantial and competent evidence. We disagree and particularly note that the Employer's present reliance upon the testimony of Dr. Piacente is clearly a futile effort, since the referee specifically found the opinion testimony of Dr. Piacente "not credible nor worthy of belief," rejecting it in favor of the testimony and opinions of Dr. Kiel. Finding of Fact No. 14. Dr. Kiel testified:

Q. Doctor, do you have an opinion within a reasonable degree of medical certainty as to whether or not the condition of the essential

tremors and pains and numbness or burning in his arms is related to his injury at work on 6/13/80?

A. Yes.

Q. What is your opinion?

A. My opinion is that in view of the temporal onset of the tremors, that they were caused by the injury.

Q. How about the pain and burning?

A. And the pain and burning as well.

Q. Doctor, can you tell us what the relationship is between the tremors and the original injury of 6/13/80?

A. Well, I think that the tremors were caused by the injury. We all have a certain degree of tremor and that the injury exacerbated our [sic] physiologic tremor to the point where it became disabling.

Q. And how about the burning in the arms; that is, the numbness, burning sensation?

A. The burning in the arms, I think was a direct relationship of the burn to superficial branch nerves in the arm and as a result of the healing in the injury in those areas that that was caused by the burning. (R.R. 82a.)

As regards Claimant's disability, Dr. Kiel testified:

. . . [D]o you have an opinion within a reasonable degree of medical certainty as to whether or not, as a result of his injury of 6/13/80, Mr. Steen was able to engage in those duties?

A. Yes, I do.

Q. What is your opinion?

A. My opinion is that I do not feel that he would be able to do those fine manipulations. (R.R. 82a.)

There is further testimony by Dr. Kiel as to Claimant's disability and extensive testimony by the Claimant as to

his efforts to attempt re-employment.[6] In this connection. it must be remembered that there is evidence to support the referee's Finding No. 8, quoted above, that Claimant was laid off on May 15, 1981 because he was unable to perform the duties of his position "due to the effects of his original work-related injury." (See R.R. 48a-49a.)

Furthermore, the Board quite correctly noted that since Claimant was laid off there has been no offer or evidence of available work which Claimant could do. In sustaining the award for total disability the Board stated:

> A claimant who was laid off from the job he was performing during his recovery from work-related injury met his burden of proof for reinstatement of compensation for total disability by establishing an inability to perform his time of injury job. The employer failed to show the availability of work which the claimant can perform and, therefore. did not overcome the claimant's right to reinstatement of total disability payments upon the termination of his job performed during the recovery from work-related injuries. Goodyear vs. Workmen's Compensation Appeal Board, 508 A.2d 637 (1986).

Accordingly, for the reasons set forth above, we will affirm.

---

[6] Employer, relying upon a decision in *Hilliard v. Workmen's Compensation Appeal Board,* 79 Pa. Commonwealth Ct. 96, 468 A.2d 881 (1983), argues from a footnote that a medical witness may not base his opinion upon a patient's statements, a statement which, of course, is not true, as legions of appellate cases have ruled. The fact is that in *Hilliard* the referee chose not to believe a claimant's testimony of a wrist fracture occurring at work which was not corroborated. Since the referee did not believe this testimony, of course, it was inappropriate to accept an expert opinion based thereon.

## ORDER

NOW, May 10, 1988, the order of the Workmen's Compensation Appeal Board as of No. A-91587, dated March 31, 1987, is hereby affirmed.