MARIE B. REITZ, Plaintiff, *v.* SIGMUND KRYSTOFOWICZ, TEFOIL KRYSTOFOWICZ, WIKTORYA KRYSTOFOWICZ, His Wife, Defendants.

Supreme Court, Erie County, April 1, 1938.

*Dickey & Dickey,* for the plaintiff.

*Ward & Ward,* for the defendants.

SWIFT, J. The plaintiff engaged one Sager, a real estate agent, to obtain a purchaser for a piece of property which she owned, and as a result of his activities the defendant Sigmund Krystofowicz entered into a written agreement with the plaintiff whereby he promised to purchase the property for $1,400, $100 in cash and the balance upon the delivery of the deed. Finding that it would be necessary for him to raise $1,200 to perform his contract, Sigmund persuaded his father and mother, the defendants Tefoil and Wiktorya Krystofowicz, to loan him that amount of money. That this family agreement might be in proper form and the father and mother duly secured by a lien upon the property to be purchased, the three defendants went to one Radziwon, a real estate agent, whom they believed to be honest, to secure his advice and assistance. Radziwon informed the defendants that to best accomplish their purpose Sigmund should give to his parents a bond secured by a mortgage upon the premises, and he then prepared the bond, which was then delivered to the obligees. He also induced the father and mother to pay over to him $1,200 in cash, and he undertook to prepare the necessary mortgage, have the title to the property examined, close the deal by paying the vendor and receiving the deed, and immediately thereafter place the mortgage on record.

On October 6, 1937, the closing time, the plaintiff, her agent, Sager, and Radziwon met at the county clerk's office, and, after all adjustments had been agreed upon and the title found to be clear, the deed was delivered to Radziwon, who thereupon gave to the plaintiff two checks drawn by him, one for $1,272.22, the other for thirty-odd dollars. The smaller check plaintiff indorsed over to Sager to cover his disbursements in her behalf, and the larger check she immediately deposited in her savings bank account.

This check was presented in due course to the bank upon which it was drawn, but, there being insufficient funds in the drawer's account, it was returned to the savings bank. That bank mailed to the plaintiff notice of the non-payment of the check, but the letter was never delivered. Some weeks later plaintiff read in the papers about Radziwon's embezzlements and the dishonored checks which he had given to others. Becoming somewhat solicitous about the check he had given to her, she at once called upon her bank and learned that her check also had been dishonored, and she immediately brought this action to set aside the deed and mortgage before mentioned.

The defendants contend that the plaintiff received Radziwon's check in payment of the money which defendant Sigmund had agreed to pay her. They claim that the check was that of a third party, and that the law will presume from its acceptance that it was received in payment. In answer to this contention it should be first noted that the check was not the check of a " third party " as that expression is used in law. It was the check of the defendants' agent. In *Everett* v. *Collins* (2 Campb. 515) Lord ELLEN-BOROUGH said: " In the ordinary case, if a creditor prefers a bill of exchange accepted by a stranger to ready money from his debtor, he must abide the hazard of the security he takes. But Mingay, Nott & Co. are not to be considered in the light of third persons, but as the defendant's servants. When they offered to pay by notes or *their* check, that was tantamount to an offer to pay by notes or *his* check. The check must be looked upon as his, and there is no pretence for saying that a debtor is discharged by giving a check which produces nothing, although payment in cash may have been previously tendered."

The only tender made to plaintiff was that of the check of the defendants' agent. Furthermore, " in the absence of an agreement to take the security in absolute satisfaction of the debt, the intendment of the law is that it is a conditional payment only, namely, that if the check is paid the debt is discharged; otherwise not." (*Greenwich Ins. Co.* v. *Oregon Imp. Co.*, 76 Hun, 194; affd., 148 N. Y. 758; *Carroll* v. *Sweet*, 128 id. 19.) It is clear that in the case at bar the plaintiff never received payment according to the terms of the contract.

It must be borne in mind that the defendants sustained no injury because of the plaintiff's failure to discover the dishonor of the check. Radziwon embezzled the money given to him by the defendants before the deed was delivered and never thereafter was there a sufficient balance in his bank account to meet the check he gave plaintiff.

The defendants selected Radziwon as their agent. They trusted him and held him out as worthy of trust. " The principals cannot enjoy the benefits of a bargain made by their agent, without adopting the instrumentalities by which he consummated it." (*Elwell* v. *Chamberlin,* 31 N. Y. 611.) " The fact that the principal turned sufficient funds over to the agent to pay the claims of third persons does not release him from liability on such claims if the agent fails to satisfy them." (3 C. J. S. 181.)

This is not, strictly speaking, a case where one of two innocent parties must suffer because of the wrongful act of a third person, because Radziwon, as a matter of fact, had despoiled the defendants prior to the time of closing the deal. At that time neither the defendant Sigmund nor his agent was in a position to perform the contract, but, in any event, it was the act of defendants in intrusting their money to Radziwon that made possible the unfortunate situation in which the parties now find themselves.

For the reasons above stated the loss should fall upon the defendants and the property, free from the lien of the mortgage, should be restored to the plaintiff upon her returning to the defendant Sigmund $100 which she received from him in cash.