A02A1704. NORTHEAST GEORGIA HEALTH SYSTEM, INC. et al.
v. DANNER.
(580 SE2d 293)

RUFFIN, Presiding Judge.

Following mediation, Cheryl Danner and her employer, Northeast Georgia Health System, Inc., agreed to settle Danner's workers' compensation claim for $25,000. Although Danner's current mailing address was contained in the settlement agreement, the employer's servicing agent inadvertently mailed the payment to her former

---

address. Danner received the payment, which was forwarded to her by the post office, but claimed it was untimely and moved the administrative law judge (ALJ) to assess a 20 percent penalty. The ALJ granted the motion, and both the appellate division and the superior court affirmed the award. We granted the employer's application for discretionary appeal, and for reasons that follow, we reverse.

The evidence underlying assessment of the penalty is undisputed. On March 28, 2001, the State Board of Workers' Compensation approved the parties' settlement agreement. On April 3, 2001, the employer's servicing agent, located in Baton Rouge, Louisiana, mailed Danner a check for the lump sum payment. Because the check was sent to Danner's former address in Cornelia, Georgia, the postal service readdressed it to her current address in Cartersville, Georgia, on April 14, 2001, and forwarded it to that address. Danner alleges that she received the check on April 18, 2001, 21 days after the Board approved the settlement agreement.

Danner subsequently moved the Board to assess a 20 percent statutory penalty, arguing that the employer failed to timely pay the settlement within 20 days as required by the Workers' Compensation Act. Under the Act, the settlement agreement became binding as an award when it was approved by the Board on March 28, 2001.[1] The Act provides that, "[i]f income benefits payable under the terms of an award are not paid within 20 days after becoming due, there shall be added to the accrued income benefits an amount equal to 20 percent thereof."[2] The method for calculating the time for payment requires that it be "[m]ail[ed] or deliver[ed] . . . to the address specified by the employee or the address of record. The payment shall be considered paid when postmarked and mailed within the State of Georgia or three days from the date of postmark and mailing if mailed out of the State."[3] In this case, the ALJ awarded the penalty upon finding "that the employer/self-insurer failed to use the proper address and, as a result of that failure, the payment was tardy." The appellate division adopted that finding.

The employer argues that it should not have been assessed a penalty because, notwithstanding the servicing agent's failure to correctly address the payment, it was timely and properly mailed by the postal service before the due date. Although we are unaware of any workers' compensation cases on point, in *Andrews v. Howard*[4] the

---

[1] See OCGA § 34-9-15 (a) (Supp. 2002); see also *Taylor v. Sunnyland Packing Co.*, 112 Ga. App. 544, 546 (145 SE2d 587) (1965).

[2] OCGA § 34-9-221 (f).

[3] Rules and Regulations of the State Board of Workers' Compensation, Rule 221 (a) (printed in Appendix to Title 34, Official Code of Georgia Ann. (Supp. 2002)). See also OCGA § 34-9-221 (b) (method for calculating time for paying income benefits under the Act).

[4] 249 Ga. 539-540 (291 SE2d 541) (1982).

Supreme Court addressed a similar issue in the context of a statutorily required notice of contract nonrenewal. The statute at issue in *Andrews* required the notice to " 'be served either personally or by certified mail. Service shall be deemed to be perfected when said notice is deposited in the United States Mail addressed to the last known address of the addressee with sufficient postage affixed thereto.' "[5] Although the notice at issue was misaddressed, the mail carrier saw the error and corrected it. The Court concluded that substantial compliance with the statutory requirements was sufficient and that "because of the diligence of the postal service, there was sufficient compliance with [the Code section]. The evidence shows an attempted delivery to her correct, last known address."[6]

We reach the same conclusion in this case. The legislature enacted the workers' compensation settlement procedures to "encourage [settlement], so long as the amount of compensation and the time and manner of payment are in accordance with [the Act]."[7] It is clear that the legislature was primarily concerned with ensuring that the employee received full and timely payment of settlement amounts. And, although the dissent states that the applicable rule "directs the employer" to mail the payment, the rule plainly does not dictate who must perform this task.[8] It is undisputed that Danner received full payment of the settlement amount, and although the servicing agent misaddressed the envelope, the postal service corrected the mistake and resent it to Danner's proper address before the 20-day time limit expired. Thus, due to the diligence of the postal service, full payment was made in the time and manner required, and we fail to see how Danner was harmed by the fact that the payment was properly mailed by the postal service and not the servicing agent.[9] Accordingly, the employer should not have been penalized, and the superior court erred in ruling otherwise.

*Judgment reversed. Andrews, P. J., Johnson, P. J., and Phipps, J., concur. Barnes, Mikell and Adams, JJ., dissent.*

BARNES, Judge, dissenting.

Because evidence supports the Board's assessment of a penalty in this case, I respectfully dissent.

The Board approved a settlement agreement between the claimant and employer on March 28, 2001. The employer mailed the settlement funds to the claimant's old address instead of the claim-

---

[5] Id. at 540 (1) (quoting former Code Ann. § 32-2101c (c)).
[6] Id.
[7] OCGA § 34-9-15 (a) (Supp. 2002).
[8] See Board Rules and Regulations, supra.
[9] See *Andrews*, supra at 540-541.

ant's address of record, and the claimant received the funds 21 days after the award date.

OCGA § 34-9-221 (f) provides: "If income benefits payable under the terms of an award are not paid within 20 days after becoming due, there shall be added to the accrued income benefits an amount equal to 20 percent thereof, which shall be paid at the same time as, but in addition to, the accrued benefits unless review of the award is granted by the board." Board of Workers' Compensation Rule 221 (a) directs the employer to "[m]ail or deliver payment to the address specified by the employee or the address of record. The payment shall be considered paid when postmarked and mailed within the State of Georgia or three days from the date of postmark and mailing if mailed out of the State."

In this case, the majority concludes that, because the post office forwarded the award envelope to the claimant's new address, which was the address of record, the date of that forwarding, April 14, constitutes the date of mailing for purposes of the statute. Because the envelope was forwarded by the post office three days before it was due, and because the Board rules "do not dictate who must properly mail the payment," as a matter of law the award was timely, according to the majority.

I disagree with that conclusion. The employer did not fulfill the basic requirement of getting the claimant's address right, and therefore did not mail the funds within the required time period. The fact that the post office forwarded the envelope, as presumably it would forward any mail addressed to that claimant at her old address, should not relieve the employer of its responsibility to mail the payment to the correct address, and its actions do not substitute for those of the employer. If it were true that, because the statute does not specify who has to mail the award, the post office's act of forwarding it constitutes "mailing" within the time limit, then the statute's requirement that the award be mailed to the claimant's address of record would be superfluous, because mailing it to an old address for which a forwarding order remains active would be sufficient if the post office subsequently forwards it to the right address within the proper time limit.

The Supreme Court's opinion in *Andrews v. Howard*, 249 Ga. 539 (291 SE2d 541) (1982), does not require a different result. In that case, the Supreme Court held that a school board "substantially complied" with the statutory notice requirement for not renewing a teacher's contract because she had received the notice before the applicable deadline, even though it was initially addressed incorrectly. The beneficial purpose of ensuring that public school teachers receive timely termination notice "well in advance of the following school year" was satisfied. Id. at 540-541.

Here, there was no substantial compliance. The purpose of the requirement is that claimants receive their payments within 20 days after they become due, and that was not done here. Service of a notice to a teacher that her contract would not be renewed the following school year is not analogous to payment of a workers' compensation award. The teacher's nonrenewal notice must be served months before the new teaching contract would otherwise start, and in *Andrews*, delivery of the notice was attempted more than a week before the deadline. In contrast, payment deadlines in workers' compensation cases are deliberately very tight, and the only requirement for mailing to constitute delivery is that the award be sent to the address of record, presumably so that delays such as those incurred in this case can be avoided.

"OCGA § 34-9-221 (f) is obviously intended to promote prompt payment of benefits to wage earners who have been deprived of their normal income due to work related injuries." *McLean Trucking Co. v. Florence*, 179 Ga. App. 514, 515 (347 SE2d 333) (1986). The only evidence in this record is that the claimant received the settlement funds 21 days after the Board approved the award, unlike the teacher in *Andrews* who received notice more than a week before the statutory due date. The school board in *Andrews* substantially complied with the statutory service requirement; the employer in this case did not substantially comply with the statutory deadline. The very injury for which the penalty is contemplated occurred here. While assessing a penalty for being one day late may seem harsh, the legislature chose to set the time limit at twenty days, not at twenty-one days.

"Whether noncompliance with OCGA § 34-9-221 is without reasonable grounds is an issue of fact to be determined by the board, and its decision will be affirmed by this court if there is any evidence to support it." *Carr v. A. P. & Harry Jones Logging*, 198 Ga. App. 698, 699 (1) (402 SE2d 538) (1991) (affirming attorney fee award for failure to give notice of suspension without reasonable grounds); *Atlanta Janitorial Svc. v. Jackson*, 182 Ga. App. 155, 159 (7) (355 SE2d 93) (1987) (affirming penalty for late payment of income benefits).

There is no independent cause of action available to an employee for an employer's deliberate failure to make workers' compensation payments. Once a late payment penalty has accrued, there is no particularly compelling reason for an employer to make the payment, and if employees must enforce collection of late payment penalties in proceedings separate from the judgment for the overdue benefits, employers will most likely make them do so. This result is

not consistent with the purpose of the Workers' Compensation Act. The Workers' Compensation Act was designed to provide immediate financial assistance to injured employees and to furnish a speedy, inexpensive and final settlement of their claims.

(Citations and punctuation omitted.) *Ayers v. Rembert*, 241 Ga. App. 698, 700-701 (527 SE2d 290) (1999) (affirming superior court's penalty assessment for employer's failure to pay award within 20 days).

"Because the Workers' Compensation Act is in derogation of common law, its provisions must be strictly construed." *Coker v. Deep South Surplus of Ga.*, 258 Ga. App. 755, 756 (574 SE2d 815) (2002). Evidence supports the Board's decision to assess a penalty against the employer in this case, and therefore it should be affirmed.

For these reasons, I respectfully dissent to the majority opinion.

I am authorized to state that Judge Mikell and Judge Adams join in this dissent.

DECIDED MARCH 24, 2003.

*Whelchel & Dunlap, Emily C. Bagwell, Thomas M. Cole*, for appellants.

*T. Russell Mobley, Jr.*, for appellee.