Gloria ROMAINE, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (BRYN MAWR CHATEAU NURSING HOME), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 30, 2004.

Decided Aug. 19, 2004.

Michael L. Brint, Upper Darby, for petitioner.

Victoria R. Fogel, Blue Bell, for respondent.

BEFORE: COLINS, President Judge, COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN.

This is an appeal by Gloria Romaine (Claimant) from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) dismissing, as untimely filed, Claimant's petition to reinstate terminated benefits. On appeal Claimant asserts that the Board erred in affirming the dismissal of her petition on timeliness grounds when it measured the beginning date of the applicable three-year limitation period from the date printed on Claimant's last benefits check rather than from either 1) the date on which she negotiated the check, or 2) the time period for which the benefits check applied.[1]

The facts are undisputed. Claimant received benefits pursuant to a Notice of Compensation Payable (NCP) for a work-related lumbar strain that occurred on July 5, 1990, while in the employ of Bryn Mawr Chateau Nursing Home (Employer). On December 16, 1994, a WCJ granted Employer's termination petition,[2] effective August 6, 1991, and terminated benefits as of that date. The Board affirmed that decision, as did this Court.

On December 16, 1997, Claimant mailed her petition to reinstate to the Bu-

---

1. Claimant also asserts that the period could begin to run on the date she received her last benefits check. However, there is no testimony in the record that identifies this actual date.

2. The WCJ found that that decision "bears a circulation date of December 16, 1994. An inside prefatory page refers to the date of the decision as December 14, but the decision bears a handwritten signature date of December 15." (Adjudication, Finding of Fact (FOF) 5.)

reau of Workers' Compensation and it was regarded as filed on that date. (WCJ Adjudication, p. 5.) Section 413 of the Workers' Compensation Act[3] (Act) requires that a petition to reinstate terminated benefits must be filed within three years after *"the date of the most recent payment of compensation* made prior to the filing of such petition [to reinstate.]" The precise question here is what event is used to determine the commencement date of the three-year period. The WCJ used the date of December 14, 1994; this was the date appearing on the last compensation check issued by Employer's insurer, The PMA Group. Therefore, the WCJ held that the petition, filed on December 16, 1997, was untimely and dismissed it. The Board affirmed and Claimant appealed to this Court.[4] On appeal she contends that the WCJ should have used either the date she negotiated the check, (December 19th, at the earliest)[5] or the time period for which the payment was made (December 6–19, 1994).[6]

Both parties agree that there is no controlling authority defining the statutory

---

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772.

4. Our scope of review where, as here, both parties have presented evidence is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas),* 140 Pa.Cmwlth.75, 591 A.2d 762, 764 n.5 (1991). It is within the sole province of the WCJ to make credibility determinations. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703 (Pa.Cmwlth.1995).

5. The WCJ wrote:

Claimant ... does not appear to have *testified to when she ...* endorsed/deposited/cashed [the check]. A letter from [Employer's] counsel (January 20, 1999) states that she endorsed it on December 19, 1994. That is *not entirely clear to this Judge,* but there is a date of December 19 on the back, some distance from the Claimant's signature (which entry I suppose may represent either an *endorsement date or some bank* processing date). Giving the Claimant the benefit of the doubt, I will assume that she *endorsed* the check no earlier than December 19 (whether or not she *received* it that day) and presumably cashed or deposited it no earlier than that date, December 19. (WCJ Adjudication, FOF 6(d)).

6. As noted earlier, Claimant also contends that we could use the date when she received the check. However, the WCJ wrote: "Claimant ... does not appear to have testified to when she received the ... check...." (WCJ Adjudication, FOF 6(d)). Perhaps because she recognizes this evidentiary lapse, Claimant also suggests we could use the date "where in the normal course of commerce, [the check] was likely to be received." (Brief, p. 11.) In support of this notion, she relies on Board Regulation 127.208, which provides that a check is deemed to be received three days after it is mailed, as follows:

**Time for payment of medical bills**

(a) Payments for treatment rendered under the act shall be made within 30 days of receipt of the bill and report submitted by the provider.

(b) For purposes of computing the timeliness of payments, the insurer shall be deemed to have received a bill and report 3 days after mailing by the provider. Payments shall be deemed timely made if mailed on or before the 30th day following receipt of the bill and report.
34 Pa.Code § 127.208.

This Regulation is expressly limited to the payment of medical bills by an employer's insurer to a provider. The Board, in its expertise, has promulgated no similar regulation for determining the "date of most recent payment." We decline to adopt the rule in a dissimilar situation, and with different statutory language (the word "received" does not appear in section 413 of the Act), particularly where Claimant has suggested no compelling basis to do so and the Board, itself, has not done so. In addition, we note that Claimant,

phrase "date of most recent payment." Employer relies on *Urick Foundry Company ·v. Workmen's Compensation Appeal Board (Aarnio)*, 91 Pa.Cmwlth.24, 496 A.2d 883 (1985), for the proposition that the date of payment is the date on the check, while Claimant relies on *Aetna Electroplating Company v. Workmen's Compensation Appeal Board (Steen)*, 116 Pa.Cmwlth.66, 542 A.2d 189 (1988), for the proposition that the date of payment is the date the check is negotiated.[7] We begin our analysis by reviewing these cases.[8]

In *Urick*, the claimant sustained a compensable injury and began receiving benefits pursuant to a NCP. He later returned to work and signed a final receipt, acknowledging that his disability had terminated on December 3, 1978. On December 4, 1981, he filed a claim petition, which the referee treated as a petition to set aside a final receipt. The referee dismissed the petition on the basis that it had not been filed "within three years from the date to which payments have been made," in accordance with Section 434 of the Act, 77

P.S. § 1001. On appeal the Board reversed, holding that the three-year limitation period ran from the date Claimant cashed his final compensation check, *i.e*, December 19, 1978 and, thus, concluded that the petition had been filed within three years of the date of payment. The Board remanded the case for a consideration of the merits. It was that remand order that was appealed to this Court and, ultimately, we quashed the appeal on the basis that it had been taken from an interlocutory order. Nonetheless, we stated in *dictum*:

> Although we would agree with the Board's conclusion that the date of the last compensation payment begins the running of the three year limitation period, we cannot agree with the Board's further conclusion that this date is to be determined by the date upon which Claimant *cashed* his check. While it is true that we did refer to the check-cashing date in *Hartung v. Workmen's Compensation Appeal Board*, 49

---

here, provided no testimony as to when the check was mailed.

7. In her brief, Claimant also has some minimal argument that the date she *received* her check controls. Since Claimant never presented any evidence as to when that date was, we need not consider that argument here. We merely note, however, that Claimant relies on *Sena v. Workers' Compensation Appeal Board (Maps, Inc.)*, 813 A.2d 32 (Pa.Cmwlth. 2002), *petition for allowance of appeal denied*, 573 Pa. 706, 827 A.2d 432 (2003), for the proposition that courts have held that a statute runs when a check (in that case a commutation check) is received. *Sena* involved a case where, in discussing the workings of the three-year limitation provision, we explained that when one takes a lump sum payment, the three-year period begins to run immediately and is not continually "reset," unlike the situation where one receives ongoing partial disability payments. In discussing that concept we stated, "For a claimant who chooses not to commute benefits, there is no statute of limitations problem because the timer is regu-

larly reset upon each new receipt of benefits." *Id.* at 35. Claimant uses this sentence to support her argument that payment is triggered by cashing the check. However, Claimant has taken this statement out of context, and it does not control the analysis here.

8. We note that both *Urick* and *Aetna* concerned petitions to set aside final receipts filed under Section 434 of the Act, 77 P.S. § 1001, whereas the case *sub judice* involves a petition to reinstate terminated benefits under Section 413. However, the statutory language establishing the limitations periods in the two provisions is similar. Section 413 provides that the petition to reinstate must be filed within three years of "the date of the most recent payment of compensation made prior to the filing of such petition...." Section 434 states that a referee may "at any time within three years from the date to which payments have been made, set aside a final receipt...."

Pa.Commonwealth Ct. 240, 410 A.2d 1301 (1980), we did so only to indicate the latest possible date upon which payment could have been made. *Id.* at 242, 410 A.2d at 1302. Under the facts in *Hartung,* even had the Court *assumed* that the payment was not made until the day the check was cashed, and had therefore begun the limitation period on that date, the petition to set aside would still have been filed beyond this period. For this reason the Court in *Hartung* could conclude that the petition was untimely filed without the need to inquire further into the actual date of payment. Clearly, *Hartung* cannot be read as equating the date of payment with the date the check is cashed.

A check is a negotiable instrument which is payable on demand on or after the date specified on its face. *See Commonwealth v. Kelinson,* 199 Pa. Superior Ct. 135, 184 A.2d 374 (1962); Sections 3109 and 3114 of the Commercial Code, 13 Pa.C.S. §§ 3109, 3114. It follows, therefore, that when compensation payments are made by check, absent any fraud or intentional delay in transmittal, payment has been made *as of the date of the check.* In this case the record indicates that the check was dated December 11, 1978. This date is clearly within three years of the date of the filing of the petition to set aside final receipt.

*Urick Foundry Company,* 496 A.2d at 885 n. 2 (emphasis in original). Both parties agree that the above-quoted language was *dictum.* Employer urges us to adopt it and Claimant asks that we reject it.

In *Aetna* the claimant also received benefits pursuant to an NCP and, ultimately, signed a final receipt. He then filed a petition to set aside under Section 434, which the referee granted and the Board affirmed. The referee found that Claimant had received his last payment of compensation when he signed the final receipt dated August 21, 1980, and that he had not cashed the payment until September 4, 1980. However, the payment was in the form of a *draft, not a check.* We held that there was no clear statement in the record that the claimant was ever paid the sum of money represented by the draft on August 21st. We opined:

> [T]he date of *payment* of the draft could not have been before September 4, 1980 and this delay in a complicated set of banking transactions clearly represents the type of "intentional delay in transmittal" envisioned in *Urick,* providing the basis for considering the actual date of receipt of payment as the date beginning the running of the statute of limitations rather than the date of the instrument, particularly where the instrument is not negotiable, as a check is, but is a draft on a specific bank to produce cash only on the acceptance of the draft by the draftee bank.

*Id.* at 193 (emphasis in original). We further explained that where payment is made by **draft,** which may or may not be honored by the draftee's bank, the statute does not begin to run until the date of actual receipt of payment. Additionally, we pointed out that there is a distinction between a **check,** which is a negotiable instrument, and a draft, which is payable solely upon presentation, thus distinguishing the case from the *dictum* in *Urick.* In the case *sub judice,* however, we are concerned with a check and not a draft. Thus, *Aetna* is distinguishable.

Claimant next argues, in the alternative, that the last date for which benefits are paid should control and that, because her last benefits check covered the period up to and including December 19th, the statute should begin to run on December 19th. We disagree. The statute clearly says that it begins to run from "the date of the

most recent payment of compensation." Had the legislature intended that it run from the date *for which* the most recent compensation was paid, rather than the date compensation was paid, it would have so stated. Claimant's proffered interpretation is simply too much at variance with the statute's language and we decline to adopt it. *See* Section 1921(b) of The Statutory Construction Act of 1972 ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). 1 Pa.C.S. § 1921(b).

Accordingly, after having considered Claimant's alternative theories, we conclude that, although it was *dictum,* our analysis in *Urick* is the proper resolution of this issue. No one disputes that Claimant was paid with a check in this case. (*See* Employer's Exhibit D–2). It was made payable on demand to Claimant, *id.,* and is a "negotiable instrument" as defined in Section 3104 of the Uniform Commercial Code, 13 Pa.C.S. § 3104. We, thus, conclude that, absent any indication of fraud, and there is none here, the date on the check should control, as discussed in *Urick.*

Having determined that the date on the check controls when payment is made and that Claimant did not file her petition for reinstatement within three years of the last payment, we affirm the order of the Board.

### ORDER

**NOW,** August 19, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.